UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANIEL BOYLAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:17-cv-01602-JPH-TAB |
| | ) | |
| BALL STATE UNIVERSITY, | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING BALL STATE'S MOTION FOR SUMMARY JUDGMENT ON FEDERAL CLAIMS AND DISMISSING REMAINING STATE CLAIM**

Daniel Boylan was an instructor in the Finance Department at Ball State University. With the goal of obtaining future employment in a tenure-track position, Mr. Boylan pursued and obtained a Ph.D. But after he received his Ph.D., Ball State did not offer him a tenure-track position. Dr. Boylan then left his instructor position at Ball State for a job at another college and brought this lawsuit alleging that Ball State discriminated against him on the basis of age and gender, retaliated against him, and breached an oral contract. Ball State seeks summary judgment on all claims. For the reasons that follow, the Court grants summary judgment to Ball State on the federal law claims and dismisses the remaining state law claim. Dkt. [54].

# I.
## Facts and Background

Because Ball State has moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

### A. Ball State's Business School, the Miller College of Business ("MCOB")

Ball State's MCOB is accredited by the Association to Advance College Schools of Business ("AACSB"). Dkt. 55 at 3. When the events relevant to this lawsuit occurred, Dr. Jennifer Bott served as Dean of the MCOB while Dr. Sushil Sharma served as the Associate Dean. *Id.* The MCOB consists of six departments: Accounting; Economics; Finance and Insurance; Information Systems and Operations; Management; and Marketing. *Id.* Dr. Manoj Athavale headed the Finance and Insurance Department. Dkt. 55-2 at 2 (Athavale Dep. 11:22–12:11).

Instructor positions are year-to-year contracts, dkt. 55-5 at 2 (Bott Decl. ¶ 6), while tenure-track positions last for six years with the possibility of tenure and promotions, dkt. 55-1 at 3 (Sharma Dep. 15:18–17:22). Tenure-track positions in the MCOB can only be filled when there is a vacancy in the tenured faculty. Dkt. 55-5 at 2 (Bott Decl. ¶ 8). Additionally, all tenure-track hires require an external search, a review of the hiring process by compliance and other offices, and a review of the proposed job offer by the Dean, Provost, President, and Board of Trustees. *Id.* at 3–4 (¶¶ 12–14).

## B. Dr. Boylan's Position as an Instructor and Desire for a Tenure-Track Position

Dr. Boylan worked as an instructor in the Finance Department from 2012-2016. *See* dkt. 55-3. His main responsibility was teaching finance courses. Dkt. 55-2 at 2 (Athavale Dep. 13:4–6). In late 2012 or early 2013, Dr. Boylan asked department faculty about pursuing his Ph.D. Dkt. 55-2 at 3 (Athavale Dep. 14:4–5). Over 2012 and 2013, Dr. Athavale and Dr. Sharma told Dr. Boylan that if he received his Ph.D. in technology from Purdue University, with a cognate in accounting, he would be "promoted into a tenure-track position" in Ball State's MCOB. Dkt. 55-4 at 9–10 (Boylan Dep. 36:10–37:10). Dr. Samuel, who was dean at the time, and Dr. Bott repeated that promise over the course of 2012—2013. *Id.* Dr. Sharma also wrote Dr. Boylan a letter of recommendation for Purdue's program. *Id.* at 10 (37:9–12).

In 2013, Dr. Boylan enrolled in Purdue's graduate program and began pursuing his Ph.D. in technology. Dkt. 55-1 at 4 (Sharma Dep. 25:13–15). Dr. Boylan received his Ph.D. in 2016. Dkt. 55-4 at 10 (Boylan Dep. 40:9–24).

## C. Dr. Boylan is Not Selected for A Tenure-Track Position

In 2015, Dr. Boylan applied for a tenure-track position in Ball State's Accounting Department, effective for the 2016-2017 academic year. Dkt. 55-7 at 8. The accounting position required several minimum qualifications, including completion of "all but dissertation" ("A.B.D.") towards a doctorate in accounting at an AACSB-accredited school, evidence of scholarly research or the potential for scholarly research in accounting, and teaching experience or evidence of potential to teach accounting. *Id.* at 5. Preferred qualifications

included a Ph.D. in accounting from an AACSB-accredited school, full-time teaching experience at the university level with an emphasis on accounting, and certified public accountant ("CPA") or other accounting certification. *Id.*

Dr. Mark Myring, chair of Ball State's Accounting Department, reviewed Dr. Boylan's materials and determined that his application did not meet the minimum qualifications because his Ph.D. was not in accounting and Purdue was not AACSB-accredited. *Id.* at 2–3 (¶¶ 7, 8, 10, 12). Dr. Myring further concluded that Dr. Boylan's graduate school transcript only included one accounting-related course and his dissertation was unrelated to accounting. *Id.* at 3 (¶ 11).

Dr. Tiffany Westfall was offered and accepted the tenure-track accounting position. *Id.* (¶ 13). Dr. Westfall's doctorate was from the University of Nebraska-Lincoln, which was AACSB-accredited, and she had a graduate degree with a specification in accounting. *Id.* (¶ 14). Dr. Westfall was also a CPA. *Id.*

On December 3, 2015, Dr. Bott, Dr. Sharma, and Dr. Athavale met with Dr. Boylan and told him that he was unqualified for any tenure-track position at Ball State's MCOB. Dkt. 55-4 at 7, 9 (Boylan Dep. 25:4–26:4, 37:9–14).

After that meeting, Dr. Boylan complained to Ball State's Office of Human Resources about discrimination, and about being called unqualified. Dkt. 55-4 at 24 (Boylan Dep. 114:16–25). Dr. Boylan wanted Kate Stoss, Ball State's Director of Human Resources, to review the job search process that the Accounting Department had used. *Id.* at 28–29 (132:24–133:5). Ms. Stoss told

4

Dr. Boylan that she had no involvement with the hiring process used to fill the tenure-track accounting position but believed it had been filled. *Id.* (132:19–133:5).

Before graduating in 2016, Dr. Boylan applied for several other tenure-track positions in Ball State's MCOB. *Id.* at 3 (9:21–12:25). Dr. Boylan did not receive an offer for any of Ball State's tenure-track positions. *See* dkt. 55-6 at 2 (Seymour Decl. ¶ 11); dkt. 55-7 at 3 (Myring Decl. ¶ 13); dkt. 55-10 at 2 (Zhao Decl. ¶¶ 8–9).

On August 16, 2016, Ball State offered Dr. Boylan an annual contract for the following academic year for the same instructor position he currently held, dkt. 55-3 at 9. Dr. Boylan resigned from his instructor position in Ball State's Finance Department the next day. Dkt. 55-8. Several days later, Ball State offered Olga McAtee an annual contract as an instructor in the Finance Department. Dkt. 55-12.

### D. EEOC Proceedings and Litigation

Believing that he had been discriminated and retaliated against, Dr. Boylan obtained a right-to-sue letter from the Equal Opportunity Commission in February 2017. *See* dkt. 55-4 at 33–35. Dr. Boylan then brought this suit against Ball State. Dkt. 1.

The complaint brings five claims against Ball State: discrimination based on sex under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (Count I); discrimination based on age under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* (Count II); retaliation under

Title VII (Count III); breach of unilateral contract under Indiana law (Count IV); and breach of contract-promissory estoppel under Indiana law (Count V). Dkt. 1.

The age discrimination claim (Count II) was previously dismissed, dkt. 57, and Dr. Boylan voluntarily dismissed his promissory estoppel claim (Count V), dkt. 61 at 1–2. The Court's analysis is thus limited to the remaining three counts: discrimination and retaliation under Title VII (Counts I and III) and breach of contract under Indiana law (Count IV).

## II.
## Applicable Law

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must inform the court "of the basis for its motion" and specify evidence demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must "go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324.

In ruling on a motion for summary judgment, the Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

**III.**

**Analysis**

## A. Title VII (Counts I and III)

Title VII prohibits an employer from failing or refusing to hire and from discharging an individual because of the individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits an employer from retaliating against an individual "because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. *Id.* § 2000e–3(a). Ball State claims it is entitled to summary judgment on Dr. Boylan's claims of discrimination and retaliation under Title VII.

### 1. Sex Discrimination (Count I)

Dr. Boylan alleges two theories of sex discrimination. First, Ball State discriminated against him when it constructively discharged him and replaced him with a substantially less qualified woman as an instructor. Dkt. 1 at 5–6 (Compl. ¶ 35). Second, Ball State discriminated against him when it failed to hire him for the tenure-track accounting position, and, instead, hired a less qualified woman. Dkt. 61 at 11–12.

Ball State argues it is entitled to summary judgment on the constructive discharge theory because Dr. Boylan voluntarily resigned and therefore cannot establish a prima facie case of discrimination under the *McDonnell Douglas* framework. Dkt. 55 at 24–26. Considering the arguments made by Ball State regarding the constructive discharge theory to which Dr. Boylan did not respond, the constructive discharge theory is deemed abandoned. *See,*

*e.g.*, *United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005) ("unsupported and undeveloped arguments are waived"); *Hughes v. City of Indianapolis*, 2012 WL 1682032, at *1 (S.D. Ind. 2012) (summary judgment granted in favor of defendant where plaintiff failed to address arguments made by defendant "or otherwise present evidence to support her allegations"). Therefore, the Court's analysis of Count I is limited to the failure-to-hire theory.

Ball State claims it is entitled to summary judgment on the failure-to-hire theory because it has articulated a legitimate, non-discriminatory reason for hiring Dr. Westfall rather than Dr. Boylan—she was more qualified. Dkt. 55 at 25–26. Ball State argues that Dr. Boylan has not presented evidence that he was "clearly more qualified" than Dr. Westfall. Dkt. 67 at 2.

Dr. Boylan argues that he was at least as qualified as Dr. Westfall. Dkt. 61 at 11. He asserts that Purdue is accredited by the Association of American Universities ("AAU"), which is more selective than AACSB, and Dr. Athavale and Dr. Sharma specifically recommended that Dr. Boylan pursue his degree in technology at Purdue. *Id.* Further, Dr. Boylan contends that Dr. Bott told him that "he was AACSB." Dkt 55-4 at 8 (Boylan Dep. 31:2–12). Although he was not a CPA, Dr. Boylan says that shouldn't matter because of his experience overseeing accounting for Lincoln National Corporation at their world headquarters. *Id.* at 10 (Boylan Dep. 38:13–39:2). Lastly, Dr. Boylan argues that he possessed one of the preferred qualifications because he had been a full-time teacher at Ball State for four academic years. *See* dkt. 55-3.

Where the employer's legitimate, non-discriminatory reason for not hiring the plaintiff is that he was not as qualified as another candidate for the position, the Court proceeds directly to the question of pretext without first analyzing whether the plaintiff has established a prima facie case under the *McDonnell Douglas* framework. *See Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885 (7th Cir. 2012) (skipping the plaintiff's initial burden and focusing on the employer's rationale and pretext); *see also Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 413 (7th Cir. 2018). At this stage, the plaintiff must present evidence sufficient to support a finding that the employer's proffered reasons were pretextual. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 402 (7th Cir. 2008).

To meet this burden, the plaintiff must show that his credentials were far more superior to those of the candidate that was hired and that no reasonable person in the exercise of impartial judgment could have chosen the person hired over the plaintiff. *Fischer*, 519 F.3d at 404; *Mlynczak v. Bodman*, 442 F.3d 1050, 1059–60 (7th Cir. 2006); *Millbrook v. IBP, Inc.*, 280 F.3d 1169, 1180 (7th Cir. 2002). Evidence of Dr. Boylan's "competing credentials" is not enough to establish pretext. *Millbrook*, 280 F.3d at 1180. The "court must respect the employer's unfettered discretion to choose among qualified candidates." *Id.* (quoting *Fischbach v. D.C. Dep't of Corr.*, 86 F.3d 1180, 1183 (1996)); *see also Millbrook*, 280 F.3d at 1181 ("[A] court's role is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments.") (internal quotations omitted).

Here, the designated evidence does not support a reasonable inference that Dr. Boylan's credentials were far superior to Dr. Westfall's. Ball State's minimum and preferred qualifications included either an A.B.D. towards a doctorate in accounting at an AACSB-accredited school or a Ph.D. in accounting from an AACSB-accredited school. Dr. Westfall had these qualifications while Dr. Boylan did not. Dr. Westfall's doctorate was specialized in accounting and Dr. Boylan's Ph.D. was in technology with a cognate in accounting. Dr. Westfall received her degree from Nebraska-Lincoln, which was AACSB-accredited, while Dr. Boylan received his Ph.D. from Purdue, which was not AACSB-accredited. Whether or not AAU was more selective than AACSB, as Dr. Boylan contends, doesn't matter. So long as the reasons Ball State identifies for the decision are not contradicted by the designated evidence, Mr. Boylan cannot establish pretext. *Millbrook*, 280 F.3d at 1181.

Dr. Westfall also had the preferred qualification of being a CPA. Dr. Boylan's credentials were not clearly superior to those of Dr. Westfall. A reasonable person exercising impartial judgment could therefore have, as Ball State did here, chosen Dr. Westfall over Dr. Boylan for the tenure-track accounting position. *Millbrook*, 280 F.3d at 1182.

Dr. Boylan has not identified any designated evidence that could support the contrary finding that Ball State's articulated reason for not offering him the tenure-track accounting position was pretextual so there is no triable issue. Therefore, summary judgment on the sex discrimination claim under Title VII (Count I) is **granted**.

## 2.      Retaliation (Count III)

Dr. Boylan identifies two decisions made by Ball State that he claims constituted retaliation under Title VII.  First, Ball State did not offer him any of the positions for which he applied and was qualified. Dkt. 1 at 7 (Compl. ¶ 45). Second, Ball State denied him an interview for the tenure-track accounting position.  Dkt. 61 at 14.  Dr. Boylan argues that both decisions were made after he complained of discrimination to Ball State's Human Resources department.

Ball State argues that Dr. Boylan cannot prove retaliation because he did not suffer a materially adverse employment action as a result of complaining to Human Resources.  Dkt. 55 at 28.

It appears there were several open tenure-track positions in Ball State's MCOB during the relevant time period. *See* dkt. 55-6 at 1 (Seymour Decl. ¶ 4); dkt. 55-7 at 1 (Myring Decl. ¶ 3); dkt. 55-10 at 1 (Zhao Decl. ¶ 4).  But in response to Ball State's motion for summary judgment, Dr. Boylan only discusses the tenure-track accounting position, *see* dkt. 61 at 14.  So any additional claims alleging that Ball State retaliated against him when it did not offer him any of the other positions for which he applied have been abandoned. *United States v. Turcotte*, 405 F.3d 515, 536 (7th Cir. 2005); *Hughes v. City of Indianapolis*, 2012 WL 1682032, at *1 (S.D. Ind. 2012).  Therefore, the Court's analysis of Count III is limited to the tenure-track accounting position he applied for in 2015.

Dr. Boylan states that he was denied an interview for the tenure-track accounting position, and consequently denied the tenure-track accounting position, after he complained to Human Resources about discrimination on December 3, 2015. Dkt. 61 at 14. Dr. Boylan contends that the interviews for the accounting position could not have been completed before then so Ball State could not have made an offer to Dr. Westfall before December 3, 2015. *Id.*

A prima facie case of retaliation under Title VII requires the plaintiff to present evidence that (1) he engaged in statutorily protected activity; (2) his employer took a materially adverse action against him; and (3) the protected activity and the adverse action are causally connected. *Robinson v. Perales*, 894 F.3d 818, 830 (7th Cir. 2018) (citing *Ripberger v. Corizon, Inc.*, 773 F.3d 871, 881 (7th Cir. 2014)). To prove causation, the plaintiff must show that his protected activity was a "but-for cause of the alleged adverse action by the employer." *Robinson*, 894 F.3d at 830. If the plaintiff presents a prima facie case, the employer must articulate a legitimate and non-discriminatory reason for the employment action. *Russell v. Bd. of Trs.*, 243 F.3d 336, 344 (7th Cir. 2001). If the employer articulates such a reason, then the plaintiff may survive summary judgment only by presenting sufficient evidence that the employer's justification is pretextual. *Id.*

Dr. Boylan relies on the suspicious timing of his complaint about the hiring process for the tenure-track accounting position in relation to Ball State's offer to Dr. Westfall. Speculation based on suspicious timing alone,

however, does not support a reasonable inference of retaliation.  *See Ripberger*, 773 F.3d 871, 883 (7th Cir. 2014) ("[M]ere temporal proximity between [the statutorily protected activity] and the action alleged to have been taken in retaliation for that [activity] will rarely be sufficient in and of itself to create a triable issue.").  Other than the timing, Dr. Boylan has not identified any designated evidence that connects Ball State's decision not to interview him for the tenure-track accounting position to his complaint to Human Resources.

Even if Dr. Boylan established a prima facie case, Ball State has presented a legitimate, nondiscriminatory reason for offering Dr. Westfall the tenure-track accounting position over Dr. Boylan—her qualifications.  Dr. Boylan has not identified any designated evidence showing that Ball State's reason for not offering him the position was pretextual.  Dr. Boylan has failed to produce evidence that his qualifications were so superior to those of Dr. Westfall that "no reasonable person, in the exercise of impartial judgment, could have chosen the [Dr. Westfall over him]."  *Millbrook*, 280 F.3d at 1180–81 (quotations and citation omitted).  So there is no evidence from which a trier of fact could conclude that Ball State's stated reason for interviewing and hiring Dr. Westfall rather than Dr. Boylan is false.

In the absence of such evidence there is no triable issue.  *Ripberger*, 773 F.3d 871, 884 (7th Cir. 2014).  Therefore, summary judgment on the retaliation claim under Title VII (Count II) is **granted**.

**B.      Breach of a Unilateral Contract (Count IV)**

Because the Court has granted summary judgment to Ball State on the

Title VII claims, Dr. Boylan's state law claim for breach of unilateral contract is

the only remaining claim.  The Court may decline to exercise supplemental

jurisdiction over a claim if (1) the claim raises a novel or complex issue

of State law, (2) the claim substantially predominates over the claim or claims

over which the district court has original jurisdiction, or (3) the Court has

dismissed all claims over which it has original jurisdiction.  28 U.S.C. §

1367(c); *see RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 478 (7th Cir.

2012); *Wehner v. Ball State Univ.*, No. IP 02-0367-C-K/ T, 2003 U.S. Dist.

LEXIS 1194, at *20 (S.D. Ind. Jan. 18, 2003).

"When all federal claims in a suit in federal court are dismissed before

trial, the presumption is that the court will relinquish federal jurisdiction

over any supplemental state law claims."  *RWJ*, 672 F.3d at 479 (quoting *Al's

Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010)).  "The

presumption is rebuttable, but it should not be lightly abandoned, as it is

based on a legitimate and substantial concern with minimizing federal

intrusion into areas of purely state law."  *Id.* at 479 (internal quotation marks

omitted).  The Seventh Circuit has identified three exceptions "that may

displace the presumption":

> (1) the statute of limitations has run on the pendent claim,
> precluding the filing of a separate suit in state court; (2)
> substantial judicial resources have already been committed, so
> that sending the case to another court will cause a substantial

duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480 (internal citations omitted).

None of the three exceptions apply here.  First, the statute of limitations has not run on Dr. Boylan's state law claim.  *See* Ind. Code § 34-11-2-7 (the statute of limitations for oral contracts is six years).  Second, substantial judicial resources have not been expended on this matter.  While the case is over two years old, this motion for summary judgment has been the only contested motion and the Court has expended relatively minimal resources.  Third, it is not "absolutely clear" how the state law claim should be decided.  Based on the parties' briefing, the state law claim hinges on whether an enforceable contract was formed under Indiana law, and, if so, whether Ball State is bound by it.  The analysis above did not reach that issue.  *See Howlett v. Hack*, 794 F.3d 721, 728 (7th Cir. 2015) ("[W]here the state-law claims have not been the focus of the litigation, the better practice is for the district court to relinquish its jurisdiction over them."); *see also Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("If the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction.").  Because none of the three exceptions apply in this case, the Court declines to exercise supplemental jurisdiction over the remaining state law claim.  *RWJ*, 672 F.3d at 479; *see, e.g., Franklin v. Randolph Cty. Comm'rs*, No. 1:18-cv-01340-JMS-DML, 2019 WL 3037181 (S.D. Ind. July 11, 2019).

Therefore, Dr. Boylan's breach of unilateral contract claim, which he is free to pursue in state court, is **dismissed**.

## IV.
## Conclusion

Ball State's motion for summary judgment, dkt. [54], is **GRANTED as to the Title VII claims set forth in Counts I and III, and the state law promissory estoppel claim set forth in Count V.** The Court declines to exercise supplemental jurisdiction over the remaining breach of unilateral contract claim as set forth in Count IV. Accordingly, **Count IV is DISMISSED without prejudice**.

Judgment consistent with this ruling shall now issue.

**SO ORDERED.**

Date: 7/31/2019

*James Patrick Hanlon*

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

Matthew L. Kelsey
DEFUR VORAN LLP
mkelsey@defur.com

Jay Meisenhelder
JAY MEISENHELDER EMPLOYMENT & CIVIL RIGHTS LEGAL SERVICES PC
jaym@ecrls.com

Scott E. Shockley
DEFUR VORAN LLP
sshockley@defur.com